IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge John L. Kane

Criminal Action **No. 12-cr-00223-JLK**

**UNITED STATES OF AMERICA,**

    Plaintiff,

v.

**3. MICHAEL DEAN SPAULDING**

    Defendant.

---

ORDER and OPINION GRANTING MOTION TO RECONSIDER AND DENYING THE RELIEF REQUESTED THEREIN

---

Kane, J.

Michael Dean Spaulding is one of three defendants in an Indictment charging drug crimes. He is named in Counts 1 and 3 along with Robert James Blankenship and Andrew John Aldridge. Of the three, only Blankenship is named in Count 2. Aldridge plead guilty to one count and has been sentenced. The case against Blankenship is pending. Spaulding entered a Plea Agreement wherein he agreed to plead guilty to one charge in exchange for the Government dismissing the other and agreed that the Government would recommend a sentence less than the applicable United States Sentencing Guideline range. I accepted the Plea Agreement, but later vacated it on Spaulding's Motion filed the day after I sentenced him. He then returned with a new proposed Plea Agreement that I rejected. He now moves me to reconsider the rejection. The Motion to Reconsider, Doc. 117, is GRANTED insofar as I have indeed reconsidered the matter, but I DENY the relief requested by it.

The Motion urges me to accept an amended guilty plea in which Spaulding agrees to

plead guilty to two counts of unlawfully using a communications facility in violation of 21 U.S.C. § 843, instead of the charge he originally plead guilty to in 2012, the more serious crime of distribution of methamphetamine and 50 grams or more of a mixture or substance containing a detectable amount of methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B) and 18 U.S.C. § 2. Additionally, the amended guilty plea contains a statement that the parties agree the statutory maximum, four years on each count, should apply. I decline to facilitate what I think is the parties' attempt to circumvent justice. The Plea Agreement signed by Spaulding on April 19, 2013 remains REJECTED.

PROCEDURAL BACKGROUND

Nearly two years ago, a grand jury indicted Spaulding on two drug-related charges, conspiracy to distribute methamphetamine and distribution of the same. Doc. 1. At his Arraignment, Detention and Discovery Hearing held on June 13, 2012 before a magistrate judge, Spaulding plead not guilty to all charges. Text only entry, Doc. 37. Pre-trial proceedings commenced and a Discovery Order was issued. *Id.*, Doc. 38.

On July 27, 2012, Spaulding notified the Court that he wished to enter a change of plea. Doc. 50. On September 11, 2012, he appeared before me and plead guilty to Count Three of the Indictment, distribution of methamphetamine and 50 grams or more of a mixture or substance containing a detectable amount of methamphetamine. I accepted the plea. Docs. 68 & 69. The essence of the bargain was that Spaulding would plead guilty to the substantive count and the conspiracy count would be dismissed at the time of sentencing. More to the point, the Plea Agreement specifically provided that I was not bound by any agreement between the parties as to the length of the sentenced imposed and that, subject to certain conditions, the prosecution would make recommendations pursuant to the Sentencing Guidelines.

As he was permitted to do by the Plea Agreement, Spaulding argued for a downward variance from the calculated Sentencing Guideline range per 18 U.S.C. §3553(a), Doc. 81. Concurrently, the Government requested a downward departure at the time of sentencing per U.S.S.G. § 5K1.1, Doc. 87, and a three-level reduction to the Sentencing Guideline starting point calculation based on United States Sentencing Guidelines §3E1.1(a) and (b), acceptance of responsibility, Doc. 88. At Spaulding's sentencing hearing, I denied the Motion for a Downward Variance and the Government's Motion regarding acceptance of responsibility and granted the Government's Motion for downward departure per U.S.S.G. § 5K1.1, ultimately sentencing Spaulding to a term of 137 months, which term was to be followed by four years of supervised release. Doc. 94. [1]

The day after his sentencing, Spaulding moved to correct his sentence per Federal Rule of Criminal Procedure 35(a), or, in the alternative, for leave to withdraw his plea pursuant to Federal Rule of Criminal Procedure 11(d). Doc. 90. I denied correction and granted withdrawal by Order dated December 10, 2012, Doc. 92. The matter resumed on trial track until Spaulding once more alerted the Court that he had reached a disposition with the Government and sought to enter a change of plea. Doc. 108.

On April 22, 2013, a change of plea hearing was held during which Spaulding and the Government asked me to accept a plea agreement whereby Spaulding would waive the existing Indictment and plead guilty to a "Superseding Information" (sic) that would charge him with two counts of unlawfully using a communications facility. Such a plea, if accepted, would result in Spaulding being eligible for a statutory maximum penalty of imprisonment for four years on each count, supervised release for one year, and a $100 special assessment fee.

---

[1] The 137 months incarceration and four years supervised release sentence was the considered recommendation of the Office of Probation. I did not follow this recommendation, but I did respect the thoughtful effort that produced it and came to the same conclusion.

In signing the proposed amended plea agreement, Spaulding stipulated that when the co-defendant Blankenship asked him on May 25, 2011 for "a ride to the planned drug transaction," Spaulding stated that he was "unavailable that day, but would be willing to give Blankenship a ride to the transaction on another day." Doc. 17, Ex-1, ¶ 14. Spaulding further stipulated that shortly thereafter, on June 9, 2011, Blankenship told him that he had several clients waiting for drug deliveries, and Spaulding agreed to make the deliveries. *Id.* at ¶15. Finally, Spaulding stipulated that later that day, he provided an FBI Special Agent with 55 grams of 82% pure methamphetamine in exchange for $2,800.

I was displeased that a defendant with a robust criminal record and who freely admitted selling methamphetamine in multiple transactions could face no more than a maximum incarceration period of four years on each count under the proposed amended plea agreement. I therefore rejected the plea at a hearing on May 9, 2013, setting again the matter for trial and ordering a hearing on an outstanding Motion to Suppress Photographic Identification, Doc. 101. The hearing on the Motion to Suppress, however, morphed into a withdrawal of the motion on the agenda and the entry of Spaulding's Motion for Reconsideration of Rejection of Plea Agreement, the matter currently pending, Doc. 117.

## APPLICABLE LAW

While criticized, plea bargaining figures heavily in our modern criminal justice system.[2] The Supreme Court has long recognized it as a constitutional method of disposing of criminal cases, pragmatically holding that "[I]f every criminal charge were subjected to a full-scale trial,

---

[2] In his dissent in *Lafler v. Cooper*, 132 S.Ct. 1376, 1380 (2012) in which the Supreme Court held that incompetent advice from counsel causing a defendant to refuse a plea bargain and be convicted in a jury trial of more serious charges amounted to the denial of the Sixth Amendment right to counsel, Justice Scalia wrote: "I am less saddened today by the outcome of this case than what it says about this Court's attitude toward criminal justice. The Court today embraces the sporting-chance theory of criminal law, in which the State functions like a conscientious casino-operator, giving each player a fair chance to beat the house, that is, to serve less time than the law says he deserves. And when a player is excluded from the tables, his constitutional rights have been violated. I do not subscribe to that theory. No one should, least of all the Justices of the Supreme Court."

the States and the Federal Government would need to multiply by many times the number of judges and court facilities." *Santobello v. New York*, 404 U.S. 257, 261 (1971).[3]

The plea bargaining process is controlled by Fed.R.Crim.P. 11, which generally provides for three types of plea agreements:

> (1) Those in which the government agrees not to bring or to dismiss other charges ("charge bargains")'
> (2) Those in which the government agrees to recommend a sentence or sentencing range or not oppose a sentence or range recommended by the defendant ("sentence bargains"; and
> (3) Those in which the parties bind the court to an agreed-upon sentence ("binding sentence bargains").

Rule 11(c)(1)(A)-(C). A plea agreement may be a "hybrid bargain," which "contain[s] part charge and part sentence bargain." *United States v. Robertson*, 45 F.3d 1423, 1437 (10th Cir. 1995).

Even though plea bargains are lawful, "[t]here is no absolute right to have a guilty plea accepted, and a court may reject a plea in the exercise of sound judicial discretion." *United States v. Carrigan*, 778 F.2d 1454, 1462 (10th Cir. 1985) ("While the procedures of Rule 11 are largely for the protection of criminal defendants…Rule 11 also contemplates the rejection of a negotiated plea when the district court believes that the bargain is too lenient, or otherwise not in the public interest."); *Robertson*, 45 F.3d at 1437("so long as district courts exercise sound judicial discretion in rejecting a tendered plea, Rule 11 is not violated.").[4]

---

[3] *Santobello* was written 42 years ago, long before jury trials of criminal cases fell below one percent of cases filed. In sum, the tail of plea bargaining had yet to start wagging the dog of jury trials. It is also worth noting Justice Scalia's refutation of the necessity bugaboo that American courts could not handle the onslaught of trials that purportedly would ensue if plea bargaining were greatly curtailed. This slippery slope statement, also made in Defendant's brief, is, of course made without benefit of any research or epistemological undertaking. As Justice Scalia observes, "In Europe, many countries adhere to what they aptly call the 'legality principle' by requiring prosecutors to charge all prosecutable offenses, which is typically incompatible with the practice of charge-bargaining. . . . Such a system reflects an admirable belief that the law is the law, and those who break it should pay the penalty provided." *Lafler v. Cooper*, 132 S.Ct. at 1396.

[4] Defendant's brief states, "However, in *United States v. Robertson,* 45 F.3d 1423 (10th Cir. 1995), which Mr. Spaulding cited to this Court at the change-of-plea hearing, the 10th Circuit pulled back from the standard of

The discretion accorded a district judge to reject a plea agreement depends on the type of agreement proffered. The imposition of sentence is always a matter of discretion for the district court. Charging decisions are almost entirely the prerogative of the executive branch. The doctrine of separation of powers mandates that each branch respect the province of the other. When, however, a charging decision implicates the sentencing discretion of the district court, the issue is drawn and the district court must spell out the reasons for the prosecutorial choices and the court's reasons for rejecting them. A district court must approach this reasoning process with considerable care, focusing on the content of the bargain and giving deference to prosecutorial reasons for framing the bargain as submitted. *See Robertson*, 45 3d at 1437-39.

Where the charges are "contrived" and "grotesquely understate" the defendant's relevant conduct, a court may reject the plea. *United States v. Rodriguez*, 45 F.Supp.2d 1088, 1091-94 (D.Colo. 1999)(court rejected guilty plea where defendant indicted on four counts of possession and intent to distribute cocaine agreed to plead guilty to a single count of traveling in interstate commerce with the intent to promote or facilitate unlawful activity and where sentencing under Indictment would lead to a sentence range of 292 to 365 months under the applicable U.S. Sentencing Guidelines and sentencing under the proposed plea agreement would result in ten months imprisonment).

## DISCUSSION

Spaulding's plea agreement was neither a pure charge bargain nor a pure sentence bargain, but a hybrid. In exchange for dismissing the drug related charges, he agreed to plead

---

unfettered discretion." The 10th Circuit did no such thing. *Robertson* holds that a trial judge must articulate the reasons for the sentencing decision so that the appellate court has a basis for review. The standard of review is and always has been abuse of discretion and that is precisely what *Carrigan* holds as well. In *Robertson,* the 10th Circuit held that the trial court abused its discretion, not that it had less discretion. To suggest *Carrigan* had said a trial court was possessed of "unfettered discretion" is to create an oxymoron, because discretion is always fettered by a rational process. It is simply not possible to exercise discretion outside the discipline of reason. What, I assume, "unfettered discretion" means is caprice and acting with such has never been a permissible exercise of the judicial function.

guilty to others. In addition, the government agreed that a particular sentence, specifically 96 months, was appropriate for the charges to which he pled. Thus, the plea agreement directly implicates both judicial and prosecutorial discretion.

Per *Robertson*'s directive, I first set forth the prosecution's reasons for framing the rejected bargain as it did, and then my justification for rejecting it as I did and continue to do.

*Prosecution's Arguments for Amended Plea Agreement*

The Government's bargain reflects disgruntlement that Spaulding's original sentence was more severe than what his co-defendant Aldridge received. Hrg. Tr. Doc. 115, p. 3-5. The Government points out that Aldridge, like Spaulding, pled guilty to a count of distribution of methamphetamine. *Id.* Although the Government concedes Aldridge's offense level was lower because his distribution charge involved a smaller quantity of methamphetamine, it claims to be mystified as to why Aldridge received 77 months while Spaulding received 137.

Acknowledging my unease with Spaulding's vast criminal record, the Government suggests Spaulding's past is not as serious as it looks on paper, but rather that "Spaulding is a chronic drug user involved in one nuisance crime after another, and that's really what is motivating the Government's plea offer" and argues that Spaulding provided information to the authorities about other traffickers. *Id* at p.9. I think the latter is the principal reason and the former is window dressing. I think so because of counsel for Spaulding's remarks. He added to the change of plea colloquy that his client is "basically a petty criminal." *Id.* at 22. By openly stating, "What Ms. Skalla (the Assistant U.S. Attorney) and I, collectively, believe, is that the 12-year sentence that the Court imposed last time was high; and frankly, we're trying to create a situation where he can do something closer to eight." Defense counsel made plain that the aim of the amended plea bargain was to constrain my sentencing options. Except as incidental to the

7

charges brought, it is not for counsel to "create sentencing situations." Sentencing is squarely within the province of the judiciary.

That Spaulding's counsel's statement is an exemplar of the parties' brazen attempt to limit my discretion is further evidenced by Spaulding's willingness to reenter his original guilty plea, provided that I agree to sentence him more leniently on round two:

> So if the Court was amenable to the former plea agreement, I mean, we would be happy to reenter that or revert to that, because we were fully prepared to execute it on the last court date. The problem was the Court imposed a 12-year sentence, we were left in a situation where we had to go to trial or work out some way in which Mr. Spaulding could serve something a little bit shorter than that.

Counsel for Spaulding, *id*. at pgs. 10-11.

*Why the Amended Plea Agreement Is Rejected*

Not all methamphetamine peddlers are Aldridges, nor are all methamphetamine distributors Spauldings. Each defendant is an individual, and I take great care to consider each individually when determining a sentence. Spaulding may have been sentenced to more time than Aldridge in absolute terms, but he was not sentenced more harshly. Each defendant received an appropriate sentence under his particular circumstances.

Aldridge was 32 years old at the time of sentencing; Spaulding was 44. Aldridge has no history of custody problems (e.g. involvement in altercations while incarcerated); Spaulding does. Aldridge has no history of violence; Spaulding's record is replete with charges for disturbing the peace, menacing, harassment, destruction of private property, assaults, and threats to persons and property. Aldridge's record contains three felonies; Spaulding's contains nine. Aldridge has a release plan and family support; Spaulding does not. Aldridge suffers from a treatable clinically diagnosed mental illness; Spaulding does not. Aldridge admitted to a single incident of methamphetamine peddling; Spaulding admits to multiple transactions.

"Adequate deference" to prosecutorial discretion does not mean abject surrender of the judicial responsibility to sentence justly, according to law and the public interest. It is not in the public interest to disregard a grand jury's finding of probable cause that two serious felonies have been committed and to substitute an Information alleging relatively benign charges which trivialize the admitted relevant conduct of the accused. Nor is it in the interest of justice to accept an Information in a plea bargain that was designed for no discernible reason other than to restrict the sentencing authority and responsibility of the presiding judge and reduce his role to that of a factotum.

Adequate deference means to give due regard to the legitimate role of the prosecution in bringing cases to the bar of justice, not to blithely advance its policy driven criteria. Adequate deference to prosecutorial discretion does not extend to accepting a recommendation that "grossly understates the defendant's relevant conduct." *United States v. Rodriquez*, 45 FSupp.2d at 1091.

Although the U.S. Attorney's Office initiates proceedings, it hands the charging baton to the grand jury. Here, the U.S. Attorney's Office made the decision to ask the grand jury to indict Spaulding on drug related charges. The grand jury found probable cause to do so. Absent good cause not shown here to deviate from the grand jury's charges, I respect the grand jury's decision.

CONCLUSION

The sentence that Spaulding and the Government wish to accept reflects, at its harshest, a recognition of Spaulding's personal drug problem. The grand jury did not indict him for having a drug problem, however, but for participating in giving drug problems to other people by selling dangerous drugs and profiting from their misery. Spaulding has been given help and

opportunities repeatedly to rid himself of his addiction and lifestyle. He has turned away from every such opportunity. He has failed to appear in court as ordered, failed to comply with community supervision, and had his probation revoked on numerous occasions. Nor is he a "petty criminal." The facts he admits and a record that includes nine felonies and 18 misdemeanors demonstrate that he is an intractable recidivist. Enough is enough.

I have reconsidered the rejection of the proposed plea bargain and the relief requested is DENIED. This case is set for jury trial and will proceed accordingly.

DATED: May 21, 2013

BY THE COURT:

*/s/John L. Kane*
John L. Kane, U.S. Senior District Judge